IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Dorothy A. Counts, ) | Case No. 1:22-cv-00435-JDA |
| Plaintiff, ) | |
| v. ) | **OPINION AND ORDER** |
| United States Department of Labor, ) | |
| Defendant. ) | |

Plaintiff brings this action for judicial review of the decision by the United States Department of Labor ("DOL") denying her claim for survivor benefits under Part E of the Energy Employees Occupational Illness Compensation Program Act of 2000 (the "EEOICPA" or the "Act"), 42 U.S.C. §§ 7384 et seq. [Doc. 1.] For the reasons set forth below, the DOL's decision is affirmed.

**BACKGROUND**

**Statutory and Regulatory Background**

The EEOICPA establishes a compensation program for covered employees—and their eligible survivors—"suffering from illnesses incurred . . . in the performance of duty for the Department of Energy [("DOE")] and certain of its contractors and subcontractors." 42 U.S.C. § 7384d(b). Under Part B of the EEOICPA, covered employees or their eligible survivors can receive compensation in the form of a lump-sum payment of $150,000.00, and covered employees can receive medical benefits for certain occupational illnesses due to their exposure to certain toxic substances in the performance of duty at DOE sites. *Id.* §§ 7384l–7384w-1. Part E of the EEOICPA provides additional compensation to

covered DOE contractor employees or their eligible survivors for permanent impairment and/or wage loss due to a covered illness resulting from work-related exposure to toxic substances at a DOE site. *Id.* §§ 7385s–7385s-16. An eligible survivor is entitled to survivor benefits under Part E only if the deceased employee would have been entitled to compensation under Part E for a covered illness and it is at least as likely as not that exposure to a toxic substance at a DOE facility was a significant factor in aggravating, contributing to, or causing the death of the employee. *Id.* § 7385s-3(a)(1). "'[C]overed illness' means an illness or death resulting from exposure to a toxic substance." *Id.* § 7385s(2).

To receive survivor benefits under Part E, a claimant must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP"). 20 C.F.R. § 30.101(a). After the claimant has submitted the necessary documents to develop her claim, the OWCP district office issues a recommended decision, including findings of fact and conclusions of law. *Id.* §§ 30.300, .306. The claimant is given an opportunity to object to the recommended decision after it is forwarded to the Final Adjudication Branch ("FAB"), and the claimant may request a hearing. *Id.* §§ 30.300, .306. The FAB considers any objections and issues a final decision. *Id.* §§ 30.300, .316. The claimant then has 30 days after issuance of a final decision to request reconsideration. *Id.* § 30.319(a). If a timely request for reconsideration is made, the final decision from the FAB is no longer considered "final." *Id*. A hearing is not available during the reconsideration process, but "[i]f the FAB grants the request for reconsideration, it will consider the written record of the claim again and issue a new final decision on the claim." *Id.* § 30.319(c). "If the FAB denies the request for reconsideration, the FAB decision that formed the basis for the

request will be considered 'final' upon the date the request is denied, and no further requests for reconsideration of that final decision of the FAB will be entertained." *Id.* § 30.319(c)(2). Following a final decision by the FAB, the claimant may seek judicial review. *Id.* § 30.319(d).

**Mr. Counts' Employee Claims**

Plaintiff's husband, James L. Counts ("Mr. Counts"), filed several employee claims under the EEOICPA. The final decision of the FAB regarding Plaintiff's survivor claim sets forth the relevant background as follows:

> Prior to [Mr. Counts'] death, in October 2006 he filed a claim for benefits under the Act (Form EE-l) for rectal cancer. He also submitted an employment history (Form DOE F 350.6) indicating that from January 1, 1969 to June 30, 1979 he was employed as a painter at the Savannah River Site (SRS), a covered [DOE] facility in Aiken, South Carolina.
>
> On June 20, 2012, the FAB issued a final decision concluding that from February 2, 1970 to December 7, 1979 [Mr. Counts] was intermittently employed by a DOE contractor at the SRS, and that he was diagnosed with rectal cancer in May 2003. Also, in its final decision, the FAB awarded [Mr. Counts] medical benefits and $150,000 in compensation under Part B of the Act for rectal cancer, concluding that he was a "covered employee with cancer." Based on its acceptance under Part B, the FAB also awarded [Mr. Counts] Part E medical benefits for his rectal cancer, concluding that he was a "covered DOE contractor employee" who contracted a "covered illness."
>
> In June 2013 and February 2014, [Mr. Counts] filed Forms EE-l for COPD and pleural plaques. On October 3, 2013, the FAB issued a final decision concluding that [Mr. Counts] was diagnosed with COPD in March 2012 and was employed as a painter at the SRS. Also, in its final decision the FAB denied [Mr. Counts'] COPD claim, concluding that his occupational exposure to asbestos, ammonia, silicon dioxide (crystalline) and Wollastonite at the SRS was not at least as likely as not a significant factor in causing, aggravating or contributing to the development of that condition. The FAB's denial was based on the August 18, 2013 written opinion of a contract

3

> medical consultant (CMC), who stated that the length of time between [Mr. Counts'] occupational toxic exposures at the SRS and his first diagnosis of COPD in 2012 was too long to support those exposures being a significant factor in causing, aggravating or contributing to the development of that condition.
>
> Regarding [Mr. Counts'] claim for pleural plaques, on December 22, 2014 the FAB issued a final decision concluding that the medical evidence was insufficient to establish a diagnosis of the same. The FAB's December 22, 2014 final decision denying [Mr. Counts'] claim was based on an October 6, 2014 written opinion from a CMC, who opined that a B reader's chest x-ray was not conclusive of the existence of pleural plaques.

[R. 3–4.[1]]

**Plaintiff's Survivor Claims**

On February 26, 2021, Plaintiff filed a claim for survivor benefits under Part E of the EEOICPA. [R. 245–46.] On the form, Plaintiff indicated that Mr. Counts had been diagnosed with the work-related conditions of colon cancer and lung problems and that he had died on May 24, 2020. [R. 245.] In support of her claim, Plaintiff submitted a copy of Mr. Counts' death certificate, which listed his immediate causes of death as chronic respiratory failure and a cerebral infarction. [R. 241.] The physician who completed the death certificate certified that to the best of his knowledge, the "death occurred . . . due to the cause(s) stated." [R. 241.]

On March 15, 2021, the OWCP sent Plaintiff a letter informing her that her claim for Mr. Counts' colon cancer had already been adjudicated and accepted as rectal cancer, that her claim for Mr. Counts' lung problems was vague, and that, if she wished to pursue

---

[1] The sealed Administrative Record is found at Docket Entry Numbers 16-1 through 16-3, and citations to the Administrative Record reference the page numbers located in the bottom right corners of the pages.

that claim, she must send written clarification of the condition along with supporting medical documentation. [R. 226.] Additionally, the letter stated that, because "the death certificate [did] not list rectal/colon cancer as a cause or contributing factor to [Mr. Counts'] death[, she would] need to submit medical evidence that [would] support this criteria" and that, if she did not feel that she could provide this evidence, she could "elect to receive compensation that would have been payable to [Mr. Counts], known as an election of benefits which would include impairment benefits [Mr. Counts] may have received had he not died." [R. 226–27.] On April 19, 2021, the OWCP sent Plaintiff another letter providing the same information. [R. 220–21.]

On April 27, 2021, Plaintiff filed a second claim for survivor benefits under Part E. [R. 215–16.] On this form, Plaintiff indicated that Mr. Counts had been diagnosed with the work-related conditions of COPD, respiratory failure, and pleural plaques and that he had died on May 24, 2020. [R. 215.] In support of her claim, Plaintiff submitted notes from a March 21, 2014, office visit, in which the physician indicated that Mr. Counts had been diagnosed with COPD. [R. 201–07.]

On June 4, 2021, the OWCP sent Plaintiff a letter informing her that under Part E of the EEOICPA, "evidence must be presented to establish a relationship between occupational exposure to a toxic substance during covered employment at a [DOE] facility and an employee's illness or death." [R. 176.] According to the letter, the database OWCP uses for processing Part E claims did not include any potential exposures for respiratory failure; therefore, Plaintiff would need to submit medical evidence to support the claimed respiratory failure. [R. 176–77.]

On July 21, 2021, the OWCP district office recommended denial of Plaintiff's claims under Part E for the conditions of colon cancer, COPD, pleural plaques, respiratory failure, and lung problems. [R. 55–63.] Plaintiff objected to the recommended decision and requested a hearing [R. 40] but subsequently withdrew her hearing request [R. 26]. In support of her objection, Plaintiff submitted an independent medical evaluation by Dean V. Moesch, M.D., who opined that, based on a review of Mr. Counts' medical records, Mr. Counts' "exposures to [toxic] substances in the occupational setting during his employment at the Savannah River Site, were at least as likely as not a significant factor in contributing to his development of COPD and other respiratory illnesses" and that "his COPD, which is attributable to Mr. Counts' workplace exposures to toxic substances, more likely than not was a significant factor in contributing to Mr. Counts' [d]eath." [R. 17–19.]

On January 7, 2022, the FAB denied Plaintiff's survivor claims for Mr. Counts' rectal cancer, pleural plaques, lung problems, COPD, and respiratory failure. [R. 3–9.] Specifically, the FAB concluded that Plaintiff did not submit medical evidence establishing that Mr. Counts' rectal cancer was at least as likely as not a significant factor causing aggravating, or contributing to his death; did not submit sufficient medical evidence to establish that Mr. Counts was diagnosed with pleural plaques; did not identify the specific illness being claimed regarding lung problems; and did not establish that Mr. Counts' toxic substance exposure was at least as likely as not a significant factor in causing, aggravating, or contributing to his COPD and respiratory failure and, consequently, that the COPD and respiratory failure did not qualify as a covered illness. [R. 8–9.]

**This Action**

Plaintiff filed this action on February 11, 2022, seeking judicial review of the FAB's final decision. [Doc. 1.] Plaintiff alleges that the decision of the DOL denying her claim for survivor benefits under Part E of the EEOICPA was arbitrary, capricious, clearly erroneous, and otherwise not in accordance with the law. [*Id*. at 2–5.] The parties have fully briefed the matter [Docs. 21–24], and it is ripe for review.

## STANDARD OF REVIEW

Under Part E of the EEOICPA, a federal court may modify or set aside a decision from the DOL "only if the court determines that such decision was arbitrary and capricious." 42 U.S.C. § 7385s-6(a). "When reviewing an agency's decision to determine if that decision was arbitrary and capricious, the scope of [the court's] review is narrow."[2] *Hughes River Watershed Conservancy v. Johnson*, 165 F.3d 283, 287 (4th Cir. 1999). Thus, courts "accord substantial deference to an agency's final action and presume it valid." *Ergon-W. Va., Inc. v. U.S. Envtl. Prot. Agency*, 896 F.3d 600, 609 (4th Cir. 2018). Nonetheless, judicial review under the arbitrary and capricious standard is not reduced "to a rubber stamp of agency action." *Friends of Back Bay v. U.S. Army Corps of Eng'rs*, 681 F.3d 581, 587 (4th Cir. 2012) (internal quotation marks omitted).

As explained by the Fourth Circuit Court of Appeals, an agency's decision is arbitrary and capricious

> if the agency relies on factors that Congress did not intend for it to consider, entirely ignores important aspects of the

---

[2] "The standard of review of Part E of the EEOICPA is similar, if not identical, to the standard of review under the APA." *Adams v. U.S. Dep't of Lab.*, 360 F. Supp. 3d 320, 336 n.29 (D.S.C. 2018). Accordingly, "case law interpreting the APA's standard of review provides useful guidance for interpreting the standard of review under Part E of the EEOICPA." *Id.*

7

>problem, explains its decision in a manner contrary to the evidence before it, or reaches a decision that is so implausible that it cannot be ascribed to a difference in view.

*Bedford Cnty. Mem'l Hosp. v. Health & Hum. Servs.*, 769 F.2d 1017, 1022 (4th Cir. 1985) When "that minimal level of analysis" is not provided, an agency's decision "is arbitrary and capricious and . . . cannot carry the force of law." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). On the other hand, when "the agency provides an explanation of its decision that includes a rational connection between the facts found and the choice made," the decision is not arbitrary and capricious. *Jimenez-Cedillo v. Sessions*, 885 F.3d 292, 297–98 (4th Cir. 2018) (cleaned up).

## **DISCUSSION**

Plaintiff argues that the DOL's decision to deny Plaintiff's claim for survivor benefits under Part E was arbitrary and capricious, unsupported by substantial evidence, and not in accordance with the law because:

- the DOL ignored, disregarded, and failed to properly consider and weigh substantial, probative evidence, which met Plaintiff's burden of proving her claim;
- the DOL's findings and conclusions of law were unsupported by the facts of Plaintiff's claim and substantial evidence of record; and
- in denying Plaintiff's claim, the DOL made errors of law by disregarding its own established guidelines and internal regulations.

[Doc. 21 at 7–12.] Specifically, Plaintiff challenges the DOL's failure to properly weigh and consider the "well-rationalized medical opinion of Dr. Moesch," which Plaintiff contends meets her burden of proving her claim. [*Id*. at 7–10.] Plaintiff also argues that

the DOL was clearly erroneous in relying on a 2013 CMC opinion of Patrick. R. Laraby, M.D., as a basis for denying Plaintiff's claim. [*Id*. at 10–12.]

The DOL, on the other hand, argues that its final agency decision was properly based on consideration of the relevant factors, was not clearly erroneous, and was consistent with applicable law. [Doc. 22.]

**Dr. Moesch's Opinion**

Dr. Moesch was retained by Plaintiff to review Mr. Counts' medical records, to provide an independent medical evaluation, and to determine whether Mr. Counts' "previously diagnosed condition of COPD was a significant factor in causing or contributing to his death." [R. 18–19.] Dr. Moesch stated that

> [n]otes from the office of Varsha Kulkarni, MD on December 2, 2010, provide a medical history and diagnosis of [COPD], based on diagnostic testing including pulmonary function testing. Dr. Kulkarni notes a significant history of tobacco use of more than 30 pack-years. Dr. Kulkarni did note that at that time, Mr. Counts had attempted smoking cessation for about three years. Dr. Kulkarni stated that it was her impression that his COPD was related to smoking and his previous occupational exposure to paints. It further noted that he had been prescribed oxygen for nocturnal hypoxia and sleep disorder associated with sleep apnea. Notes from . . . July 13, 2011 show a diagnosis of obstructive sleep apnea and noted that he was using a CPAP at night. Notes from Dr. Kulkarni's office note significant symptoms including shortness of breath. Progress notes from Dr. Kulkarni's office in 2012 further note long term exposures to dusts, strong fumes, isocyanates and other chemical fumes as contributing to his respiratory diagnoses. A chest x-ray report from December 2013 provides that Mr. Counts had atelectasis in the lung bases. Mr. Counts' COPD was a chronic and progressive illness, which he suffered from until his death on March 24, 2020.

[R. 18.] Dr. Moesch noted that Mr. Counts worked as a painter at the Savannah River Site intermittently from February 1970 through December 1979 and had significant,

9

almost daily exposure to asbestos at low to moderate levels in his capacity as a painter. [R. 18.] Dr. Moesch also noted that a 2014 Statement of Accepted Facts created by the DOL noted Mr. Counts' asbestos exposure and that a 2013 Statement of Accepted Facts noted moderate exposure to ammonia, and indirect moderate exposure to silicon dioxide and wollastonite in his capacity as a painter. [R. 18.]

In his assessment, Dr. Moesch explained that risk factors for the development of COPD include smoking and occupational exposures to airborne fumes, dusts, and gasses. [R. 19.] Dr. Moesch also noted that peer-reviewed medical literature and scientific studies have found that such exposures in occupational environments act additively to increase a person's risk of developing COPD. [R. 19.] Additionally, Dr. Moesch stated that there is no safe level of exposure to asbestos, which has been shown to increase the risk of developing COPD, and that the latency period between exposure and development of asbestos-based lung disease is 15 to 50 years. [R. 19.] Based on his review, Dr. Moesch concluded that,

> given the extent of Mr. Counts' occupational exposure to the above discussed toxic substances, most notably, asbestos, silica, and other airborne dusts, fumes and gasses, it [was his] opinion to a reasonable degree of medical certainty that [Mr. Counts'] exposures to these substances in the occupational setting during his employment at the Savannah River Site, were at least as likely as not a significant factor in contributing to his development of COPD and other respiratory illnesses. COPD is a contributing factor and comorbidity in the health outcome of chronic respiratory failure; thus, it [was his] opinion to a reasonable degree of medical certainty that [Mr. Counts'] COPD, which is attributable to Mr. Counts' workplace

> exposures to toxic substances, more likely than not was a significant factor in contributing to Mr. Counts' [d]eath.

[R. 19.]

**Dr. Laraby's 2013 CMC Opinion**

In August 2013, while the OWCP was reviewing Mr. Counts' claim for COPD, it referred the case file to Dr. Laraby, a CMC specializing in occupational medicine. [R. 719–28.] Dr. Laraby was asked whether it was "'at least as likely as not' that [Mr. Counts'] toxic exposure at a DOE facility was a significant factor in aggravati[ng], contributing to, or causing the claimed condition of COPD." [R. 728.] In his CMC opinion, Dr. Laraby noted that "[t]here are definite associations between the exposed toxicants . . . and COPD," that "[s]moking causes approximately 80 to 90 percent of COPD deaths," and that "[m]ale smokers are nearly 12 times as likely to die from COPD as men who have never smoked." [R. 720–21.] Dr. Laraby further noted that other risk factors of COPD include air pollution, second-hand smoke, history of childhood respiratory infections, and heredity, and that occupational exposure to certain industrial pollutants also increases the odds for COPD. [R. 721.] Dr. Laraby noted that the fraction of COPD attributed to work was estimated as 19.2% overall and 31.1% among never smokers. [R. 721.]

Dr. Laraby explained that COPD develops over many years and found it noteworthy that Mr. Counts' exposures occurred in 1970, but his disease onset began around 2013. [R. 721.] Dr. Laraby opined that "this time lag is too long for these toxicants at SRS to *significantly* contribute to [Mr. Counts'] COPD, and greatly lends strength to the

11

decision that exposures at the SRS are not significantly more likely than not contributory, causative or aggravating to his COPD." [R. 721.] Thus, Dr. Laraby concluded that,

> taking all of the above into consideration and given Mr. Counts' exposure as a [p]ainter to occupational toxicants (ammonia, Asbestos, silicon dioxide, and Wollastonite), it IS NOT at least as likely as not that they were a significant factor that caused, contributed to, or aggravated his Chronic Obstructive Pulmonary Disease (COPD).

[R. 721.]

**Analysis**

Upon review, the Court concludes that the DOL's decision to deny Plaintiff's claim was not arbitrary or capricious. Plaintiff has clarified that the sole issue challenged in this action "is whether the [DOL] was arbitrary and capricious in the adjudication of [Plaintiff's] claim for benefits stemming from Mr. Counts' occupational COPD and his ultimate demise from respiratory failure." [Doc. 23 at 2.] Accordingly, the Court focuses its review on the FAB's conclusion that Plaintiff did not establish that Mr. Counts' toxic substance exposure was at least as likely as not a significant factor in causing, aggravating, or contributing to his COPD and respiratory failure.

The DOL evaluated, weighed, and considered the evidence provided by Plaintiff in support of her claim and found it to be insufficient to meet her burden. The Court concludes that the DOL's findings and conclusions regarding Dr. Moesch's opinion were rationally and factually based, as the DOL expressly determined the opinion failed to connect Mr. Counts' exposure to occupational toxic substances at the SRS to his COPD or his respiratory failure and his cause of death. [R. 9 (noting that, "[a]lthough Dr. Moesch stated that asbestos exposure increases the risk of developing COPD with a latency period of 15-50 years, he *did not discuss* whether [Mr. Counts'] chest x-rays and/or other

radiological studies of his lungs revealed findings, such as pleural plaques or pleural fibrosis, that were indicative of asbestos exposure, a form of pneumoconiosis" (emphasis added)).] Further, the DOL's consideration to Dr. Laraby's 2013 opinion was appropriate. Chapter 18 of the DOL's EEOICPA Procedure Manual provides that the DOL may refer cases to a medical consultant "when the medical reports and/or tests do not include a clear interpretation and/or if there is a specific question(s) about the medical evidence." Federal Energy Employees Occupational Illness Compensation Program Act Procedure Manual, Chapter 18.8.b, https://www.dol.gov/sites/dolgov/files/owcp/energy/regs/compliance/PolicyandProcedures/procedure_manual_5.1-2021.09.pdf (last visited Mar. 24, 2025). And 20 C.F.R. § 30.410(a) provides that the OWCP may send a case file to a medical professional selected by the DOL for review when the agency deems such review necessary. As such, Dr. Laraby's opinion was part of the record and was specifically related to Mr. Counts' COPD. Although Plaintiff argues Dr. Laraby's opinion contained a "misunderstanding of the facts of Mr. Counts' employment" [Doc. 21 at 10], the Court finds this argument unpersuasive. Dr. Laraby noted his consideration of the Statement of Accepted Facts in his evaluation, and his opinion indicates his awareness and consideration of Mr. Counts' employment history with SRS.

Further, the Court concludes that the DOL adequately explained its consideration of the competing opinions regarding the latency period between exposure and manifestation of Mr. Counts' COPD. Although Plaintiff argues the finding contradicts the DOL's own guidelines and generally accepted science regarding the latency period for asbestos-related lung disease, Plaintiff fails to explain how the language she cites from the manual would require a finding of causation in this instance. [Doc. 21 at 11 (citing

13

Exhibit 15-4.7 of the EEOICPA Procedure Manual, which provides that Part E causation can be assumed only if certain criteria have been met).]  Further, the FAB specifically stated that Dr. Moesch's opinion failed to specifically link Mr. Counts' exposure to toxic substances to his COPD diagnosis or his death.  Overall, the Court concludes that the DOL's decision has a rational basis, and the Court may not substitute its judgment for that of the agency.  Therefore, the Court concludes that the DOL's decision was neither arbitrary nor capricious.

## **CONCLUSION**

Based on the foregoing, the DOL's decision is AFFIRMED, and this case is DISMISSED with prejudice.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

March 24, 2025
Columbia, South Carolina